UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

WILLIAM TODD LaPLANTE,

                    Plaintiff,                         Case No. 2:13-cv-32

v.                                                     Honorable Robert Holmes Bell

MICHAEL LOVELACE et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint in part and serve the complaint in part as set forth in this Opinion. The Court also will deny Plaintiff's motion to amend (docket #25) and his motion for class certification (docket #26).

**Factual Allegations**

Plaintiff currently is incarcerated in the Baraga Maximum Correctional Facility, but the events giving rise to his complaint occurred while he was incarcerated at the Marquette County Jail (MCJ) from September 8, 2010 through February 4, 2011. In his *pro se* amended complaint (docket #22), Plaintiff sues the Marquette County Sheriff's Department, Marquette County Sheriff Michael Lovelace, Undersheriff Jack Schneider and the following MCJ employees: Sergeant Brian Steede, Corporal (Unknown) Osbourn, Officer (Unknown) Rataske, Sergeant (unknown) Sides, Corporal (Unknown) Harrington, Officer (Unknown) Bradbury, Nurse Joe Wilcox, Corporal A. Norberg, Corporal Jason Kangas, Deputy A. Kemper, Deputy K. Carlson, Deputy D. Speaker, Deputy Gema Cowporthwait, Deputy D. DeChambeau, Deputy K. Canull, Head Cook (Unknown) Bart, Jail Administrator Gregg Gustafson, Corporal Jeffrey Savola, Sergeant Shelly Simula, Officer Christopher Reynolds, Officer Mandie Haile, "Jon/Jane Doe - Accounting Personnel," "Jon Doe - Lobby Officer" and "Jon/Jane Doe - Certified Nutritionalist [sic]." Plaintiff also sues Doctor John Lehtinen, Health Professional Limited, CBM Food Service, Keefe Supply Company and Evercom Telephone Comany.

Plaintiff raises a long list of claims concerning the conditions of confinement during his five-month stay at MCJ.[1] The Court will provide additional facts below as necessary to address Plaintiff's claims. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

---

[1]Plaintiff seeks to incorporate by reference all of the allegations set forth in his proposed supplemental complaint filed on February 12, 2013 (docket #13). In its March 5, 2013 order requiring Plaintiff to file an amended complaint on the required form, the Court indicated that the amended complaint would take the place of the original complaint, so it must include all of the Defendants that Plaintiff intends to sue and all of the claims that Plaintiff intends to raise. Accordingly, the Court will consider only those Defendants and claims included in Plaintiff's amended complaint (docket #22).

<u>**Discussion**</u>

I.        **Motion for Class Certification**

Plaintiff moves to have this matter certified as a class action (docket #26).  For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation.  *See* FED. R. CIV. P. 23(a)(4).  It is well established that *pro se* litigants are inappropriate representatives of the interests of others.  *See Garrison v. Michigan Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98-6156, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999); *Marr v. Mich.*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996).  Accordingly, because Plaintiffs are incarcerated, *pro se* litigants, the Court finds that they are not appropriate representatives of a class.  Therefore, the Court will deny Plaintiffs' request for class certification.

II.        **Marquette County Sheriff's Department and Sheriff Lovelace**

Plaintiff sues the Marquette County Sheriff's Department.  The sheriff's department is not itself a separate legal entity that can be sued under § 1983.  *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) ("[T]he Sheriff's Department is not a legal entity subject to suit[.]" (citation omitted)).  However, the Court construes the complaint to assert a claim against Marquette County, which governs the jail, and is an entity that is a "person" that may be sued under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff.

-3-

*Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447, 453-54 (2010) (citing *Monell*, 436 U.S. at 694). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997).

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. MICH. COMP. LAWS § 51.75 (sheriff has the "charge and custody" of the jails in his county); MICH. COMP. LAWS § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); MICH. COMP. LAWS § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the Court looks to the allegations in Plaintiff's complaint to determine whether he has alleged that the sheriff has established a policy or custom which caused Plaintiff to be deprived of a constitutional right. Consequently, in evaluating Plaintiff's individual claims, the Court will consider whether Plaintiff has alleged that Sheriff Lovelace has established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

III.     **Failure to Make Allegations**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff lists as Defendants Undersheriff Jack Schneider, Corporal A. Norberg, Deputy A. Kemper, Deputy K. Carlson, Deputy D. Speaker, Deputy Gema Cowporthwait, Deputy D. DeChambeau, Deputy K. Canull, and "Jon Doe - Lobby Officer," but does not make any specific factual allegations against them in the body of the amended complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails even to mention Defendants Schneider, Norberg, Kemper, Carlson, Speaker, Cowporthwait, DeChambeau, Canull and "Jon Doe - Lobby Officer" in the body of his amended complaint. His allegations fall far short of the minimal pleading

standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, those Defendants will be dismissed for failure to state a claim.

IV.     **Eighth Amendment**

A.     *Medical Care*

Plaintiff was arrested at work on September 8, 2010. Approximately ten days earlier, on August 29, 2010, Plaintiff went to the emergency room for a shoulder injury. The emergency room doctor instructed Plaintiff to wear a sling to hold his clavical in place and prescribed him two different pain medications. The doctor also told Plaintiff that he needed to see a doctor after ten days for further treatment, including possible surgery to repair his shoulder. In addition, Plaintiff injured his foot on September 7, 2010, when he stepped on a nail at work. Plaintiff informed the arresting officers of his injuries and need for medical treatment. The arresting officers subsequently informed MCJ of Plaintiff's injuries and were told that Plaintiff would be treated by medical personnel at the jail. After spending approximately two days in a holding cell, Plaintiff was interviewed by Defendant Nurse Wilcox. Plaintiff explained his injuries and need for follow-up care for his shoulder and treatment for his foot. Plaintiff was experiencing considerable pain in his shoulder and foot, and had not had pain medication since the time of his arrest.

Plaintiff submitted a health care kite on September 17 because he heard that Dr. Lehtinen was going to be at the jail the following day. Plaintiff, however, was never seen by Dr. Lehtinen during his incarceration at MCJ. Defendant Wilcox saw Plaintiff again on September 20, 2010. Plaintiff complained that he had not received any medical treatment or pain medication since his arrest. Wilcox told Plaintiff that he had spoken to Dr. Lehtinen about Plaintiff's foot and the

Doctor had responded, "[I]t was only a nail in his foot he'll be alright." (Compl. 18, Page ID#146.) Plaintiff told Wilcox that he continued to experience severe pain in his shoulder and foot and requested treatment. The attorney in Plaintiff's criminal matter also called Defendant Jail Administrator Gustafson on at least two occasions and left messages requesting medical treatment for Plaintiff's injuries, but Gustafson did not respond.

After Plaintiff wrote a grievance concerning the denial of medical care, he was taken to a walk-in clinic on September 23, 2010, for X-rays of his foot. The doctor told Plaintiff that his foot was not broken, but there likely was bruising on the bone and nerve damage. When Plaintiff asked the doctor if he was going to look at his shoulder, the doctor responded that the order from the jail only included treatment for Plaintiff's foot.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo*

-8-

*Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

At this juncture, Plaintiffs allegations are sufficient to order service of Plaintiff's Eighth Amendment medical claims against Defendants Wilcox and Lehtinen. Plaintiff, however, does not allege that Sheriff Lovelace established a policy or custom of denying medical care to prisoners at the jail. *Humphries*, 131 S. Ct. at 453-54. Consequently, he fails to state a claim against Defendants Lovelace and Marquette County.

Plaintiff also fails to state a claim against Defendant Gustafson. The only allegation in the complaint against Defendant Gustafson is that he failed to act in response to the phone messages from Plaintiff's attorney regarding the lack of medical care for Plaintiff's injuries. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must

be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Gustafson engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against Gustafson.

Plaintiff names "Health Professional Limited" as a Defendant, but does not make any specific allegations in his complaint against that entity. As previously discussed, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier*, 41 F. App'x at 764; *Griffin*, 2000 WL 1800569, at *2. Assuming Health Professional Limited is a state actor and therefore a proper party to this § 1983 action, it cannot be held vicariously liable for the actions of its agents on a respondeat superior basis. *See Street*, 102 F.3d at 818 (noting that "every circuit to consider the issue has extended the holding [of *Monell* ] to private corporations as well"). Thus, Health Professional Limited's liability must also be premised on some policy that caused a deprivation of Plaintiff's

Eighth Amendment rights. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Plaintiff does not make any allegations whatsoever against Health Professional Limited, let alone that he was deprived of medical care as a result of policy established by Health Professional Limited. Consequently, Plaintiff fails to state a claim upon which relief may be granted.

B.      *Cell Conditions and Recreation*

Upon his arrival at MCJ, Plaintiff claims that he was placed in a holding cell for approximately two days without a mattress, pillow or personal hygiene supplies. Plaintiff also was not allowed to take a shower during that two-day period. Plaintiff also complains about the conditions of confinement in F Block, his housing unit. Plaintiff alleges that the cell block was overcrowded and lacked sufficient ventilation. According to Plaintiff, the cell block, which was approximately 550 square feet, contained five bunk beds and two picnic-style tables. In some instances, another four prisoners were placed in the cell and slept on the floor for a total of fourteen inmates. The cell block had two air ducts, one of which was clogged with lint, dust and other debris. The cell block had two sinks in the common area and one toilet, one urinal and one shower in an area separate from the common area. Plaintiff claims that in November and December of 2010, the urinal sprayed water at the user when it was flushed. After complaining repeatedly to prison staff about the problem, Plaintiff used a deodorant label to keep the water from spraying on people when they used the urinal.

The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v.*

-11-

*Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

With regard to the conditions in the holding cell, allegations about temporary inconveniences do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Consequently, Plaintiff's brief two-day stay in the holding cell without a mattress, pillow or hygiene supplies does not rise to the level of an Eighth Amendment violation.

Plaintiff also fails to state a claim concerning the conditions of confinement in F Block. Although Plaintiff's allegations implicate the Eighth Amendment, overcrowding is not, in itself, a constitutional violation, and Plaintiff does not claim that the allegedly overcrowded conditions actually caused him harm or resulted in an unconstitutional denial of basic needs. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes*, 452 U.S. at 347-48; *Argamonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012); *Halliburton v. Sunquist*, 59 F. App'x 781, 782 (6th Cir. 2003). Likewise, Plaintiff does not allege that he was harmed by the poor ventilation. *See Jasman v. Schmidt*, 4 F. App'x 233, 236 (6th Cir. 2001); *see also King v. Berghuis*, 2010 WL 565373, at *3 (W.D. Mich. 2010) ("Absent such extreme conditions raising serious risks to prisoner health, the courts routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim.") (collecting cases). In addition, while unpleasant, being sprayed with

clean water when flushing the urinal does not rise to the level of an Eighth Amendment violation. Moreover, Plaintiff was able to stop the spray of water by placing a label on the urinal.

Plaintiff further claims that inmates at MCJ are not provided with adequate opportunity for recreation. He claims that during the two-month period from September 8 through November 10, 2010, he was offered the opportunity for indoor recreation on only seven occasions. He further alleges that he did not receive outdoor recreation or exposure to sunlight during the entire five-month period of his incarceration at MCJ. The Eighth Amendment entitles prisoners to sufficient exercise to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920–27 (6th Cir. 1985). Limitations on outdoor exercise may violate the Eighth Amendment in some circumstances, but the Sixth Circuit has not set a minimum amount of outdoor recreation time that is required. *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995). Instead, it has held that "'a total or near-total deprivation of exercise or recreational opportunity, without penological justification,'" impinges on an inmate's Eighth Amendment right, because "'[i]nmates require regular exercise to maintain reasonably good physical and psychological health.'" *Id.* (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)).

Plaintiff alleges that he received seven indoor recreation periods over a two-month period. He does not claim he was denied all opportunity for recreation or other physical activity sufficient to maintain reasonably good health, or that he was prevented from performing calisthenics, running in place, or other exercises in his cell block. Plaintiff's conclusory allegations are insufficient to show that he was subjected to the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Plaintiff, therefore, fails to state a claim upon which relief may be granted.

C.     *Food Portions*

Plaintiff contends that during his incarceration at MCJ, he did not receive adequate food portions and/or the minimum daily caloric intake of 2000 calories set by the U.S.D.A. and the Michigan Department of Corrections (MDOC). Plaintiff further claims that MCJ failed to meet the standard requiring two hot meals per day. The Eighth Amendment requires prisoners to be served sufficient food to maintain normal health. *Cuningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977). Notwithstanding his allegations of insufficient food portions, it is clear from the complaint that Plaintiff received three meals per day at MCJ. Plaintiff does not allege that he lost weight or suffered any negative health effects from his diet. Even losing a small amount of weight while being held in a jail does not evidence a constitutional violation. See *Mummery v. Montgomery Cnty. Jail*, No. 3:12-cv-0115 (M.D. Tenn. Nov. 30, 2012). Furthermore, absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.  See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007). Plaintiff alleges no physical injury. As a consequence, his claim for emotional damages is barred.

Furthermore, the fact that Plaintiff did not receive two hot meals per day during his five-month incarceration at MCJ did not constitute the type of extreme deprivation that would violate the Eighth Amendment. In general, complaints about the preparation or quality of prison food are "far removed from Eighth Amendment concerns." *Cunningham*, 567 F.2d at 659–60. As the Sixth Circuit has observed that "[C]old food apparently is an ordinary incident in prison life." *Thaddeus-X v. Blatter*, 175 F.3d 378, 404 (6th Cir. 1999) (collecting cases). Consequently, a prisoner's claim that he was served cold meals does not amount to a constitutional deprivation. *See Strauss v. Ray*,

No. 99-5370, 2000 WL 875690, at *2 (6th Cir. Jun. 19, 2000) (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)); *see also Dean v. Campbell*, No. 97-5955, 1998 WL 466137, at *2 (6th Cir. July 30, 1998) (per curiam) (holding that allegation of cold meals for a short period of time "fail[ed] to allege facts showing that [prisoner] was subjected to the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim"); *Johnson v. Horn*, 150 F.3d 276, 282 (3d Cir. 1998) (holding that serving cold instead of hot kosher food to inmate did not violate prisoner's First Amendment rights); *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) (holding that prisoner's constitutional rights were not violated when he was served cold food); *Madyun v. Thompson*, 657 F.2d 868, 874-75 (7th Cir. 1981) (holding that allegation that food served to segregated prisoners was cold and not on menu served to general prison population was insufficient to state an Eighth Amendment claim); *Woods v. Frederick*, No. 4:07 CV 68, 2007 WL 1198882, at *4 (N.D. Ohio Apr. 18, 2007) (finding that a prison's failure to provide two hot meals per day for thirty days while the cafeteria was being remodeled did not violate the Eighth Amendment). Plaintiff, therefore, fails to state a claim regarding the food service at MCJ.

Plaintiff does not make specific allegations in his complaint against Defendant Head Cook (Unknown) Bart, Defendant CBM Food Service Provider or "Jon/Jane Doe - Certified Nutritionalist [sic]." As previously discussed, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier*, 41 F. App'x at 764; *Griffin*, 2000 WL 1800569, at *2. Even assuming Plaintiff sued

these Defendants for failing to provide adequate food portions and/or two hot meals per day, he fails to state a claim against them for the reasons set forth above. Consequently, Defendants Bart, CBM Food Service Provider and "Jon/Jane Doe - Certified Nutritionalist [sic]" will be dismissed for failure to state a claim.

### V. **Due Process**

#### A. *Grievance Process*

Plaintiff claims that several Defendants refused to give him grievance forms or told him that the issue he wanted to grieve was non-grievable, which allegedly violated his rights to due process and to petition the government for redress. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). In the absence of a liberty interest in the grievance process, Defendants' conduct did not deprive him of due process. Plaintiff's only allegations against Defendants Reynolds and Savola concern the grievance process. Accordingly, they will be dismissed from this action for failure to state a claim.

#### B. *Seizure of Television*

Plaintiff also claims that his due process rights were violated when, on two separate occasions, Defendant Rataskie seized the television set in his housing unit for a period of twenty-four

hours. The seizures occurred when Rataskie found prisoners up talking when they were supposed to be in bed. Plaintiff complains that rather than utilizing the disciplinary process for the offending prisoners, Rataskie improperly punished the entire unit by taking away the television. When Plaintiff complained to Defendant Osbourn about Rataskie's actions, he was told that the television was a privilege and could be taken away at any time. Osbourn also refused to give Plaintiff a grievance on the ground that the issue was non-grievable.[2]

There is no constitutional right to have continuous access to a television while incarcerated. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see also Rawls v. Sundquist*, No. 96-5931, 1997 WL 211289 (6th Cir. Apr. 28, 1997) (citing *Murphy v. Walker*, 51 F.3d 714, 718 n.8 (7th Cir. 1995)). Because the television did not belong to Plaintiff, he was not entitled to notice and a hearing in connection with its seizure. Moreover, the brief periods during which Plaintiff was denied access to a television clearly were not an atypical or significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Accordingly, Plaintiff fails to state a claim against Defendants Rataskie and Osbourn relating to the seizure of the television set.

C. *Seizure of Letter*

Plaintiff claims that Defendant Bradbury improperly seized a letter from his cell on October 9, 2010. The letter was from his girlfriend, Renee Bressette. Plaintiff asked Bradbury for a grievance form and to speak with the shift commander. The shift commander, Defendant Simula, never came to speak to Plaintiff and Plaintiff never received a grievance form because the issue

---

[2]As discussed in Part V(A), *supra*, Defendant Osbourn's refusal to provide Plaintiff with a grievance form fails to state a claim upon which relief may be granted.

allegedly was non-grievable. Plaintiff contends that he was deprived of the letter in violation of his due process rights.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Jul. 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims

-18-

asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Bradbury will be dismissed.[3]

Moreover, Defendant Simula cannot be held liable for the conduct of Defendant Bradbury under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter,* 532 F.3d at 575; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Simula engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against him.

---

[3] Furthermore, as discussed in Part V(A), *supra*, the failure to provide Plaintiff with a grievance form fails to state a claim upon which relief may be granted.

D.     *Seizure of Money from Prisoner Account*

Plaintiff alleges that Defendant "Jon/Jane Doe - Accounting Personnel" improperly removed funds from his prisoner account in violation of his due process rights.  Plaintiff was informed that the money was removed from his account to pay for past room and board.  Plaintiff contends that he did not owe money to the county for room and board at the jail because he was on work release during his previous incarceration and paid in full for his stay.  Before that, he was held at the jail on a parole detainer.  Plaintiff claims that, under state law, the county is required to seek reimbursement from the state when a prisoner is held at the jail on a parole detainer.  Plaintiff further claims that there was no civil judgment entered against him and he was not afforded a hearing before the funds were removed.

This claim also is barred by the *Parratt* doctrine. As previously discussed, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.   Plaintiff does not allege any reason why the available state post-deprivation remedies would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's due process claim against "Jon/Jane Doe - Accounting Personnel"  will be dismissed.

E.     *Commissary Prices*

Plaintiff claims that prisoners at MCJ pay twice the normal retail price for commissary items that are provided by Defendant Keefe Supply Company.  Federal courts consistently have held that prisoners have no constitutional right to purchase products at regular

retail prices. *See, e.g., McCall v. Keefe Supply Co.*, 71 F. App'x 779, 780 (10th Cir. 2003) (allegation that prisoner was overcharged for goods at prison commissary failed to state a constitutional claim); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) (no legal basis exists for a demand that inmates be offered items for purchase at or near cost; *Griffin v. Doe*, No. 1:10-cv-1987, 2011 WL 94563, at *1 (N.D. Ohio Jan. 11, 2011) ("Prisoners have no constitutional right to purchase products at the same price as charged in retail stores."); *Simpson v. Caruso*, No. 1:09–cv–245, 2009 WL 1010973, at *3 (W.D. Mich. Apr. 14, 2009) (same); *Floyd v. Emmet Cnty. Corr. Facility*, No. 1:06–cv–283, 2006 WL 1429536, at *4 (W.D. Mich. May 23, 2006) (same).

Furthermore, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West*, 487 U.S. at 48; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street,* 102 F.3d at 814. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Plaintiff has not presented any allegations by which Keefe's conduct could be fairly attributed to the State. Plaintiff, therefore, fails to state a claim against Keefe arising from the cost of goods in the jail commissary.

F.      *No Contact Order*

On September 25, 2010, a block officer informed Plaintiff that he could not attend church services because there was a "no contact" order between Plaintiff and another inmate,

Michael Bressette, who was the brother of Plaintiff's girlfriend. According to Plaintiff, he never had

a problem with Bressette and had no idea why a no contact order was in place. When Plaintiff asked

MCJ staff why the no contact order had been entered, he was told that Bressette said that he was mad

at Plaintiff and threatened to harm Plaintiff if they did not keep him away from Bressette. Plaintiff

learned from another prisoner that Bressette was not at the church service on September 25. On

October 9, Plaintiff again was denied access to church services due to the no contact order. Plaintiff

explained to Defendant Officer Haile that Bressette did not attend the Christian church services

because he was a Native American and practiced Native American religion. Haile responded that

Plaintiff could not attend the church service regardless of whether Bressette attended the Christian

church services. Haile further stated that Defendant Harrington, the shift commander, was the one

who told her that Plaintiff could not attend the service. Haile also told Plaintiff that the no contact

order "was not [her] problem" and that the issue was non-grievable. (Compl. 31, Page ID#159.)

Plaintiff contends that he never received notice or a hearing regarding the no contact order in

violation of his due process rights.

          The Supreme Court has held that a prisoner does not have a protected liberty interest

in the procedures affecting his classification and security because the resulting restraint does not

impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For example, in *Rimmer-Bey v. Brown*,

62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a

Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest

that he receive notice and hearing before being placed in administrative segregation. The court held

that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty

interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). The Supreme Court also repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). The "no contact" order imposed between Plaintiff and another prisoner is nothing more than a security tool used by the jail. In this case, the order was entered to protect Plaintiff from another prisoner who threatened him with harm. In the absence of a liberty interest, Plaintiff fails to state a due process claim against Defendants Haile and Harrington resulting from the no contact order.[4]

---

[4] Plaintiff's First Amendment claim against Defendants Haile and Harrington will be discussed below.

VI.     **First Amendment**

A.     *Access to the Courts*

Plaintiff claims that he made repeated requests for legal materials to challenge the conditions of his confinement and denial of medical treatment. Defendants Sides and Osbourn allegedly told Plaintiff that the prison was not required to provide Plaintiff with legal materials and that he should consult his court-appointed attorney. Plaintiff explained that his attorney only was representing him in criminal matters, not civil matters pertaining to the conditions of his incarceration, but Defendants continued to deny his requests for legal materials. Plaintiff also claims that Defendant Kangas refused to take him to the law library due to the no contact order.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must

plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Plaintiff does not specifically allege what legal materials he was unable to obtain or how he was injured by Defendants' alleged failure to provide the requested materials. Because Plaintiff does not allege an actual injury, he fails to state a claim against Defendants Osbourn, Sides or Kangas.

Plaintiff filed a "Motion to Supplement and/or to Amend Complaint" (docket #25), claiming that he has additional facts that would demonstrate that he suffered actual injury as a result of his inability to access legal materials. Federal Rule of Civil Procedure 15 provides that a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so requires." FED. R. CIV. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id* at 182. The Court noted that the grant or denial of the opportunity to amend was discretionary with the district court and that the district court should provide a justifying reason for its decision. *Id.*

In this instance, evaluation of the factors identified in *Foman* is difficult as Plaintiff has not provided the new factual allegations in his motion or in a proposed amended complaint. To grant leave to amend without reviewing the proposed amendment would be inappropriate. *See, e.g., Wolgin v. Simon*, 722 F.2d 389, 394-395 (8th Cir. 1983) ; *Nation v. United States Gov't.*, 512 F. Supp. 121, 124-25 (S.D. Ohio 1981); *Williams v. Wilkerson*, 90 F.R.D. 168 (E.D. Va. 1981).

Because Plaintiff already had an opportunity to file an amended complaint and failed to provide the Court with any new factual allegations in support of his access to the courts claim, his motion for leave to amend will be denied.

B.  *Access to Religious Services, Bible and other Books*

Plaintiff alleges that he was not permitted to attend Christian church services at the jail in violation of his First Amendment right to free exercise of his religion.  Plaintiff was denied access to the services as a result of the no contact order with prisoner Bressette.  As set forth above, Defendants Haile and Harrington told Plaintiff that he could not attend Christian services regardless of whether Bressette attended the same services.  Plaintiff further claims that prisoners at MCJ could not receive any books through the mail, including a Bible.  However, when Plaintiff's mother inquired about sending Plaintiff a study Bible, Defendant "Jon/Jane Doe" told her that a pastor could bring Plaintiff a Bible.  When Plaintiff inquired about purchasing a book, Defendant Steede told him that he could not purchase books, but the jail had a library and prisoners could receive magazines if they had a subscription.  Steede also indicated that Plaintiff could get a Bible from the pastor.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While Plaintiff does not have a liberty interest related to the no contact order, his allegations concerning the denial of access to religious services are sufficient to state a First Amendment claim against Defendants Haile and Harrington. Plaintiff, however, does not allege that Sheriff Lovelace established a policy or custom of denying prisoners access to religious services. *Humphries*, 131 S. Ct. at 453-54. Consequently, he fails to state a claim against Defendants Lovelace and Marquette County. Plaintiff also fails to state a free exercise claim relating to the Bible. Plaintiff was told that he could get a Bible from the pastor and he does not allege that he was unable to do so.

However, the Court must consider whether the policy disallowing prisoners to order and receive books through the mail violated Plaintiff's First Amendment right to receive mail. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). MCJ's policy must be evaluated under the four-factor test established in *Turner v. Safley*, 482 U.S. 78 (1987). Under the *Turner* standard, a prison regulation which impinges on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89; *see also Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989).

> First is whether the regulation is legitimate and neutral, and rationally related to the underlying government objective. Second is whether the prisoners have alternative means of exercising the right. Third is the impact accommodation will have on guards and other inmates, and on the allocation of prison resources in general. Fourth is the absence of ready alternatives.

*Sheets v. Moore*, 97 F.3d 164, 168 (6th Cir. 1996) (citing *Turner*, 482 U.S. at 89-90). At this stage of the proceedings, the Court lacks sufficient information to evaluate MCJ's book policy under *Turner*. Consequently, Plaintiff's First Amendment claim will be served against Defendant Steede. Because Plaintiff's claim concerns a jail policy instituted by Defendant Lovelace, the claim also will be served against Defendants Lovelace and Marquette County.

C.    *Telephone Charges*

Plaintiff also claims that Defendant Evercom was charging prisoners at MCJ significantly higher rates for collect calls than prisoners incarcerated within the MDOC. Construing the complaint generously, *see Haines*, 404 U.S. at 520, the Court will assume that Plaintiff intends to raise a First Amendment challenge. Federal courts, including this Court, have consistently rejected First Amendment claims challenging high telephone rates on grounds that prisoners are not entitled to a specific rate for telephone calls and that prisoners failed to allege that the rates were so exorbitant as to deprive them of telephone access altogether. *See, e.g.*, *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) ("There is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether."); *Semler v. Ludeman*, No. 09–0732, 2010 WL 145275, at *15 (D. Minn. Jan. 8, 2010) (dismissing a claim that telephone rates were expensive because involuntarily committed sex offenders "do not have a First Amendment right to a specific rate for their telephone calls," and the plaintiffs "made no allegation that they are precluded from making telephone calls given the rate charged"); *Jayne v. Bosenko*, No. 2:08–cv–02767–MSB, 2009 WL 4281995, at *9-10  (E.D. Cal. Nov. 23, 2009) (same); *Beaulieu v. Ludeman*, No. 07–CV–1535, 2008 WL 2498241, at *19 (D. Minn. June 18, 2008) (same); *Bowcut v. Idaho State Bd. of Corr.*, No. CV06–208–S–BLW, 2008 WL 2445279, at *4 (D. Idaho June 16, 2008) (same); *Thomas v. King*, No. CV F 06 0649, 2008 WL 802475, at *3 (E.D. Cal. Mar. 24, 2008) (same); *Dotson v. Calhoun Cnty. Sheriff's Dep't*, No. 1:07–cv–1037, 2008 WL 160622, at *3 (W.D. Mich.  Jan. 15, 2008); *Boyer v. Taylor*, No. 06–694–GMS, 2007 WL 2049905, at *9 (D. Del. Jul. 16, 2007); *Riley v. Doyle*, No. 06–C–574–C, 2006 WL 2947453, at *4

(W.D. Wis. Oct. 16, 2006) ("[T]elephone rates charged to institutionalized persons do not implicate the First Amendment no matter how exorbitant they may be.").

Plaintiff does not allege that he was unable to make telephone calls or otherwise communicate with friends and family as a result of the high telephone rates. Moreover, the fact that Evercom provides telephone services to prisoners pursuant to a contract with the MCJ, alone, is insufficient to transform Evercom into a state actor for purposes of Section 1983. *See Iswed v. Caruso*, No. 1:08-cv-1118, 2009 WL 4251076, at *3 (W.D. Mich. Nov. 24, 2009); *see also Breland v. Evercom System, Inc.*, No. 7:09-cv-60, 2009 WL 1490488, at *1 (M.D. Ga. May 27, 2009) (fact that Evercom provided phone service in the county jail does not constitute action under color of state law); *Middleton v. MCI Telecommunications Corp.*, 2005 WL 2495358 (M.D. Fla. Oct.10, 2005) (telephone carrier defendant not a state actor); *Daniels v. Bowles*, 2004 WL 2479917 (N.D. Tex. Nov. 2, 2004) (for-profit telephone company does not act under color of state law). Plaintiff, therefore, fails to state a First Amendment claim against Evercom.

VII. **Failure to Follow Prison Policy**

Plaintiff makes numerous allegations that Defendants failed to follow internal jail policies. Defendant's alleged failure to comply with a policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Plaintiff, therefore, fails to state a claim arising from the alleged policy violations.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Schneider, Osbourn, Rataske, Sides, Bradbury, "Jon/Jane Doe - Accounting Personnel," Keefe Supply Company, Evercom Telephone Company, Norberg, Kangas, Kemper, Carlson, Speaker, Cowporthwait, DeChambeau, Canull, "Jon Doe - Lobby Officer," Bart, CBM Food Service, "Jon/Jane Doe - Certified Nutritionalist [sic]," Gustafson, Savola, Simula, Reynolds and Health Professional Limited will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will order service of the following claims against the remaining Defendants:

    (1)    Plaintiff's Eighth Amendment claim against Defendants Wilcox and Lehtinen regarding denial of medical treatment;

    (2)    Plaintiff's First Amendment claim against Defendants Haile and Harrington regarding denial of access to religious services; and

    (3)    Plaintiff's First Amendment claim against Defendants Steede, Lovelace and Marquette County concerning the policy prohibiting prisoners from ordering books from outside the facility.

The Court also will deny Plaintiff's motions to amend (docket #25) and for class certification (docket #26).

An Order consistent with this Opinion will be entered.

Dated: <u>October 9, 2013</u>        /s/ Robert Holmes Bell       
                                    ROBERT HOLMES BELL
                                    UNITED STATES DISTRICT JUDGE